1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   THOMAS JONES,

11            Plaintiff,                          No. 2:09-cv-03214 KJN

12        v.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,
14
              Defendant.                          ORDER
15   _____/

16            Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits

18   under Title II of the Social Security Act ("Act") and Supplemental Security Income under Title

19   XVI of the Act.[1]  (Dkt. No. 21.)  In plaintiff's motion for summary judgment, plaintiff contends

20   that the Administrative Law Judge ("ALJ") erred by: (1) rejecting or discounting the medical

21   opinion of plaintiff's treating physician, Gordon Lui, M.D., without providing specific and

22   legitimate reasons for doing so; (2) discounting plaintiff's own testimony regarding the disabling

23   nature of his impairments without providing clear and convincing reasons for doing so;

24   _____

25            [1]  This case was referred to the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to
26   proceed before a United States Magistrate Judge.  (Dkt. Nos. 7, 11.)

                                                 1

1   (3) rejecting the third-party statements of plaintiff's mother, Joanne Jones, without providing

2   legally sufficient reasons for doing so; and (4) erred in questioning the vocational expert and

3   relying on the vocational expert's testimony.  The Commissioner filed an opposition to plaintiff's

4   motion and a cross-motion for summary judgment.  (Dkt. No. 22.)  For the reasons stated below,

5   the court denies plaintiff's motion for summary judgment and grants the Commissioner's cross-

6   motion for summary judgment.

7   I.         BACKGROUND[2]

8         Plaintiff was 40 years old at the time of the ALJ's decision denying plaintiff's

9   applications for benefits and he has a high school level education.  (Administrative Transcript

10   ("AT") 15, 403.)  In terms of previous employment, plaintiff drove a tractor-trailer, also referred

11   to as an "18-wheeler," for 15 years and was laid off in 2003.  (AT 404-05, 417.)  Although

12   plaintiff apparently attempted to find work as a driver or working in a grocery store, he has not

13   been hired.  (AT 15.)  Generally, plaintiff's ailments relate to claimed degenerative problems and

14   pain in his lower back and the radiation of that pain.

15       A.    Procedural Background

16         On December 7, 2005, plaintiff applied for Disability Insurance Benefits and

17   Supplemental Security Income benefits, alleging a disability onset date of October 1, 2002.  (AT

18   60-62.)  The Social Security Administration denied plaintiff's applications initially and upon

19   reconsideration.  (AT 34-35, 372-73.)  Plaintiff filed a request for a hearing, and the ALJ

20   conducted a hearing regarding plaintiff's claims on September 28, 2008.  (AT 39, 398-429.)

21

22      [2]  Because the parties are familiar with the factual background of this case, including
plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The

23   facts related to plaintiff's impairments and medical history will be addressed only insofar as they
are relevant the issues presented by the parties' respective motions.

24      Additionally, to the extent the undersigned uses the present tense in referring to or
describing plaintiff's alleged conditions or functional abilities, or the ALJ's or Appeals Council's

25   characterizations of the same, the undersigned clarifies that such references are to plaintiff's
conditions or functional abilities at the time of the ALJ's or Appeals Council's decision, unless

26   otherwise indicated.

Plaintiff, who was represented by counsel at the hearing, testified at the hearing.  A vocational expert ("VE") also testified at the hearing.  Plaintiff's mother, Joanne Jones, also provided a third-party witness statement regarding observations of plaintiff's pain and functional limitations on a form entitled "Function Report – Adult – Third Party."  (AT 93-100.)

In a decision dated August 21, 2007, the ALJ denied plaintiff's application. (AT 13-25.)  In reliance on the VE's testimony, the ALJ determined that plaintiff could still perform other work as an order clerk and surveillance systems monitor, which are jobs that exist in significant numbers in the regional or national economies.[3]  (AT 24-25.)  The ALJ's decision

---

[3]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq.  Generally speaking, Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1  became the final decision of the Commissioner when the Appeals Council denied plaintiff's

2  request for review.  (AT 5-8.)  Plaintiff subsequently filed this action.

3        B.        Summary of the ALJ's Findings

4             The ALJ conducted the required five-step evaluation and concluded that plaintiff

5  was not disabled within the meaning of the Act.  At step one, the ALJ concluded that plaintiff

6  had not engaged in substantial gainful activity since October 1, 2002, the alleged date of onset.

7  (AT 15.)  At step two, the ALJ concluded that plaintiff had the following "severe" impairments:

8  "Disk [sic] degeneration at L3-4, L4-5, and L5-S1; annular[4] tear at L4-5, disk [sic] protrusion at

9  L5-S1, and facet arthrosis[5] at L4-5.  Disk [sic] degeneration in his cervical and thoracic spine."

10  (AT 15.)  At step three, the ALJ determined that plaintiff's impairments, whether alone or in

11  combination, did not meet or medically equal any impairment listed in the applicable regulations.

12  (AT 19.)

13             The ALJ further determined that although plaintiff has the residual functional

14  capacity ("RFC") to perform "light work," plaintiff's ability to work at that level is eroded to

15  some degree and, accordingly, plaintiff: can only occasionally perform activities such as climbing

16  ladders, ropes, and scaffolds; can only occasionally engage in stooping and crouching; and is

17  limited in reaching in all directions, including overhead.  (AT 20.)  In arriving at this RFC, the

18  ALJ considered, but accorded "minimal weight" to, the medical opinion of plaintiff's treating

19  physician, Gordon Lui, M.D.  (See AT 20; see also AT 18-19.)  The ALJ also found that plaintiff

20  was not a credible witness, stating that plaintiff's "statements concerning the intensity,

21  persistence and limiting effects of [his] symptoms are not entirely credible."  (AT 22.)  The ALJ

22  also accorded "minimal weight" to Joanne Jones's third-party function report.  (AT 23.)

23

24        [4]  The term "annular," or its variant, "anular," means "ring-shaped."  See Stedman's
     Medical Dictionary 113 (Lippincott Williams & Wilkins, eds., 28th ed. 2006).

25
        [5]  The term "arthrosis" refers to "degenerative joint changes."  Stedman's Medical
26  Dictionary 163.

1    At step four, the ALJ found that, considering plaintiff's RFC and the VE's

2  testimony, plaintiff is unable to perform past relevant work as a truck driver. (AT 23.) The ALJ

3  concluded at step five that "there are jobs that exist in significant numbers in the national

4  economy that [plaintiff] can perform." (AT 24.) Specifically, the ALJ found that, based on

5  plaintiff's RFC and the VE's testimony, plaintiff could work as an order clerk or a surveillance

6  systems monitor. In regards to the position of order clerk, the ALJ found that there are "4,000

7  positions locally, 84,000 in California, and 570,000 in the United States." (AT 24.) As for the

8  position of surveillance systems monitor, the ALJ found that there are "6,700 such jobs in the

9  United States, 508 in California, and 166 locally." (AT 24.) Accordingly, the ALJ found that

10 plaintiff was not disabled.

11 II.    STANDARDS OF REVIEW

12    The court reviews the Commissioner's decision to determine whether it is (1) free

13 of legal error, and (2) supported by substantial evidence in the record as a whole. Bruce v.

14 Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th

15 Cir. 2009). This standard of review has been described as "highly deferential." Valentine v.

16 Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "'Substantial evidence means

17 more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

18 reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc.

19 Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035,

20 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health &

21 Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)). "The ALJ is responsible for determining

22 credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews,

23 53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he

24 ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Findings

25 of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); see also

26 McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000). "Where the evidence as a whole can

1    support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's."

2    <u>Bray</u>, 554 F.3d at 1222; <u>see also</u> <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1198 (9th Cir.

3    2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's

4    decision should be upheld.") (quoting <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005)).

5    However, the court "must consider the entire record as a whole and may not affirm simply by

6    isolating a 'specific quantum of supporting evidence.'"   <u>Ryan</u>, 528 F.3d at 1198 (quoting

7    <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)); <u>accord</u> <u>Lingenfelter v. Astrue</u>,

8    504 F.3d 1028, 1035 (9th Cir. 2007).

9    III.    <u>ANALYSIS</u>

10           As noted above, plaintiff alleges that the ALJ erred by: (1) rejecting or

11   discounting the medical opinion of plaintiff's treating physician, Dr. Lui, without providing

12   specific and legitimate reasons for doing so; (2) discounting plaintiff's subjective testimony as

13   not entirely credible without providing clear and convincing reasons for doing so; (3) rejecting

14   Joanne Jones's third-party statements without providing legally sufficient reasons for doing so;

15   and (4) erred in questioning the VE and relying on portions of the VE's testimony.   The

16   undersigned addresses each assigned error in turn.

17           A.    <u>The ALJ's Rejection of Dr. Gordon Lui's Medical Opinion</u>

18           It is undisputed that Dr. Lui was plaintiff's treating physician since in or around

19   October 2006.  On April 3, 2007, Dr. Lui completed a "Lumbar Spine Residual Functional

20   Capacity Questionnaire."[6]  (AT 301-06.)  The ALJ accorded Dr. Lui's assessment of plaintiff's

21   work capacity "minimal weight."  (AT 20.)  Plaintiff argues that the ALJ erred by discounting

22   Dr. Lui's medical opinion without providing specific and legitimate reasons for doing so.

23   Plaintiff specifically complains that the ALJ erred by not adopting Dr. Lui's assessment that

24   plaintiff: (1) could occasionally lift and carry less than ten pounds and rarely lift and carry ten

25   _____

26           [6]  Much of Dr. Lui's responses to the pre-printed questions in the questionnaire are
     illegible.

6

pounds; (2) could occasionally twist, stoop, or crouch; (3) would need to walk around every

twenty minutes for fifteen minutes at a time; (4) would need to shift positions at will; (5) would

need to take two to three unscheduled breaks per day for fifteen minutes at a time; (6) would

need to elevate his legs at thirty degrees for ten to twenty percent of the work day if working in a

sedentary job; (7) would frequently experience pain severe enough to interfere with attention and

concentration;[7] and (8) miss four days of work per month as a result of his impairments or

treatment.  (Pl.'s Mot. for Summ. J. at 10.)

The medical opinions of three types of medical sources are recognized in social

security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but

do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

claimant (nonexamining physicians)."  Lester, 81 F.3d at 830.  Generally, a treating physician's

opinion should be accorded more weight than opinions of doctors who did not treat the claimant,

and an examining physician's opinion is entitled to greater weight than a non-examining

physician's opinion.  Id.  Where a treating or examining physician's opinion is uncontradicted by

another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the

treating physician's ultimate conclusions.  Id.  If the treating or examining doctor's medical

opinion is contradicted by another doctor, the Commissioner must provide "specific and

legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by

substantial evidence in the record.  Id. at 830-31; accord Valentine, 574 F.3d at 692.  "'The ALJ

can meet this burden by setting out a detailed and thorough summary of the facts and conflicting

clinical evidence, stating [her] interpretation thereof, and making findings.'"  Tommasetti, 533

F.3d at 1041 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989)).

Here, the ALJ provided three reasons for discounting Dr. Lui's functional

[7]  Dr. Lui specifically noted that plaintiff self-reported that plaintiff's pain was severe enough to interfere with attention and concentration for three quarters of the day.  (AT 302.)

7

assessment.[8]  The parties do not dispute that Dr. Lui's opinion is contradicted and that,

accordingly, the ALJ was required to provide specific and legitimate reasons for discounting that

opinion.

First, the ALJ relied on the fact that Dr. Lui "had only been treating [plaintiff]

since October 19, 2006, and not since his alleged onset of October of 2002." (AT 20.)  The

ALJ's reason is specific and legitimate only to a limited degree.  The ALJ may discount the

opinion of a doctor who simply offers a retrospective diagnosis of a claimant's condition.  See

Magallanes, 881 F.2d at 754; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).

However, the ALJ's reasoning here has no application to the period beginning in October 2006,

when Dr. Lui became plaintiff's treating physician.  Moreover, Dr. Lui did not provide his

functional assessment until April 2007.  Thus, the ALJ's reason is of limited legitimacy.

Second, the ALJ questioned Dr. Lui's credibility, noting that although Dr. Lui

repeatedly referred to a diagnosis of carpal tunnel syndrome, plaintiff's "diagnostic studies

repeatedly showed that there was no evidence of carpal tunnel syndrome in either extremity."

(AT 20.)  "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and

unsupported by the record as a whole . . . or by objective medical findings."  Batson v. Comm'r

of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).  Here, Dr. Lui referred to a diagnosis

of carpal tunnel syndrome (AT 191, 193), but the remainder of the record reflects no evidence of

carpal tunnel syndrome (see AT 141, 322, 353).  Accordingly, the ALJ's reason is specific and

---

[8]  The Commissioner offers additional reasons not relied on by the ALJ in order to substantiate or bolster the ALJ's rejection of Dr. Lui's assessment.  (Commissioner's Cross-Motion for Summ. J. at 9.)  The undersigned has not considered the Commissioner's newly minted reasons because the court's review is constrained to the reasons asserted by the ALJ.  See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."); accord Tommasetti, 533 F.3d at 1039 n.2 (declining to review reasons provided by the district court in support of the ALJ's credibility decision that were not provided by the ALJ during the administrative proceedings) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.")); Robbins, 466 F.3d at 884 n.2.

1  legitimate.

2  Third, the ALJ reasoned that despite being seen by "a myriad of doctors and

3  specialists," and having "undergone numerous diagnostic studies of his spinal impairments," the

4  "majority of the findings have been mild and benign" and no "specialist has recommended

5  surgery." (AT 21.)  Relatedly, the ALJ discounted Dr. Lui's functional assessment because

6  plaintiff "has only been referred for physical therapy, home exercises, and possibly steroid

7  epidural injections." (AT 21.)  In essence, the ALJ concluded that the severity of Dr. Lui's

8  assessment of plaintiff's functional limitations is inconsistent with the mild and benign findings

9  and conservative treatment recommendations in the remainder of the record.  Again, an ALJ may

10  discredit a treating physician's opinion that is unsupported by the record as a whole or by

11  objective medical findings.  See, e.g., Batson, 359 F.3d at 1195.  Moreover, a conservative

12  course of treatment relative to a finding of total disability is a proper basis for discounting the

13  extreme restrictions reported by a treating physician.  See Rollins v. Massanari, 261 F.3d 853,

14  856 (9th Cir. 2001).  As required, the ALJ set out a detailed and thorough summary of the facts

15  and conflicting clinical evidence (AT 16-19), stated his interpretation of the evidence, and made

16  findings regarding Dr. Lui's assessment in light of the evidence in the record.  Accordingly, the

17  ALJ's reason for rejecting Dr. Lui's severe assessment of plaintiff is specific and legitimate.

18  The undersigned concludes that, on balance, the ALJ provided specific and

19  legitimate reasons for discounting Dr. Lui's functional assessment.

20        B.     The ALJ's Adverse Credibility Finding

21  Plaintiff next challenges the ALJ's finding that plaintiff's subjective testimony

22  about his pain and functional limitations was not "entirely credible."  (See AT 22.)  In

23  Lingenfelter v. Astrue, the Ninth Circuit Court of Appeals summarized the ALJ's task with

24  respect to assessing a claimant's credibility:

25                  To determine whether a claimant's testimony regarding subjective
                pain or symptoms is credible, an ALJ must engage in a two-step analysis.

26                  First, the ALJ must determine whether the claimant has presented

9

objective medical evidence of an underlying impairment which could
reasonably be expected to produce the pain or other symptoms alleged.
The claimant, however, need not show that her impairment could
reasonably be expected to cause the severity of the symptom she has
alleged; she need only show that it could reasonably have caused some
degree of the symptom.  Thus, the ALJ may not reject subjective symptom
testimony . . . simply because there is no showing that the impairment can
reasonably produce the degree of symptom alleged.

        Second, if the claimant meets this first test, and there is no
evidence of malingering, the ALJ can reject the claimant's testimony about
the severity of her symptoms only by offering specific, clear and
convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "The ALJ must

specifically identify what testimony is credible and what testimony undermines the claimant's

complaints."  Valentine, 574 F.3d at 693 (quotation marks omitted) (quoting Morgan v. Comm'r

of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an

ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness,

inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct,

[claimant's] daily activities, [her] work record, and testimony from physicians and third parties

concerning the nature, severity, and effect of the symptoms of which [claimant] complains."

Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting

Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is

supported by substantial evidence in the record, the court "may not engage in second-guessing."

Id. at 959.

        The ALJ's credibility determination hinges on the second step of the analysis

described in Lingenfelter.  The ALJ found that the record contained objective medical evidence

of an underlying impairment that could reasonably be expected to produce the pain or other

symptoms alleged.  (AT 22.)  Because the ALJ did not identify any evidence of malingering, he

was required to provide clear and convincing reasons for discounting plaintiff's testimony.

////

////

10

1   The ALJ offered several reasons for his adverse credibility finding.[9]  Although the

2   undersigned finds that some of the reasons provided by the ALJ are minimally persuasive, the

3   ALJ nonetheless provided clear and convincing reasons for his credibility determination.

4   First, the ALJ noted that although plaintiff claimed that he was permanently

5   disabled since 2002, the evidence in the record reflects that in or around July 2003, plaintiff

6   reported "pulling a man out of a roll over accident."  (AT 22; see also AT 337 (noting the

7   accident and the fact that plaintiff had to "struggle a little bit" with the accident victim to get the

8   victim out of the vehicle).)  Although plaintiff was treated for a muscle strain as a result, the ALJ

9   permissibly concluded that plaintiff's acts in relation to the roll over accident undermine

10  plaintiff's claim that he was totally disabled as of October 1, 2002.  Plaintiff complains that the

11  ALJ is essentially cherry-picking evidence from the record, but the ALJ is entitled to identify

12  contradictions between a plaintiff's claims or testimony and a plaintiff's conduct when

13  evaluating credibility.

14  Second, and similar to the first reason provided by the ALJ, the ALJ commented

15  that although plaintiff claimed to be totally disabled as of October 2002, plaintiff reported

16  performing tile work for three to four days in or around September 2003.  (AT 22; see also AT

17  331 (record of emergency department visit where plaintiff reported doing tile work for three to

18  four days prior to experiencing pain in his elbow).)  Plaintiff reported developing elbow pain as a

19  result of doing the tile work, and the emergency department physician believed it was likely that

20  plaintiff hit his ulnar nerve while performing the tile work.  (AT 331-33.)  Again, however, the

21  ALJ permissibly concluded that plaintiff's ability to perform several days of strenuous labor such

22

23  [9]  Once again, the Commissioner advances several reasons in support of the ALJ's credibility determination that were not provided by the ALJ during the agency proceedings. (Commissioner's Cross-Motion for Summ. J. at 11-13.)  Curiously, the Commissioner barely, if at all, attempts to support the reasons actually offered by the ALJ.  The undersigned has not considered the Commissioner's post hoc justifications for the ALJ's decision and, instead, reviews only the ALJ's express reasons for his credibility finding.  See Orn, 495 F.3d at 630; accord Tommasetti, 533 F.3d at 1039 n.2; Robbins, 466 F.3d at 884 n.2; Connett, 340 F.3d at 874.

11

as tile work undermines plaintiff's claim that he was totally disabled since October 2002.

Third, the ALJ questioned plaintiff's credibility because plaintiff waited until December of 2005 to apply for Social Security benefits despite: (1) an alleged onset date of October 1, 2002; (2) State Disability Insurance that expired in or around September of 2003; and (3) plaintiff's reported disabling pain and functional limitations. (See AT 22.) Although the undersigned agrees to some extent that it is odd that a totally disabled person would wait so long to seek benefits, the undersigned finds that plaintiff's failure to apply for Social Security benefits closer to the alleged date of onset is largely a speculative basis for discounting plaintiff's credibility. There could have been several reasons that explain why plaintiff waited to apply for benefits. Moreover, the ALJ has cited nothing in the record that substantiates that this delay calls plaintiff's credibility into question. Accordingly, the undersigned gives minimal weight to this reason offered by the ALJ.

Fourth, the ALJ noted a contradiction between plaintiff's claim of complete disability as of October 1, 2002, and plaintiff's ability "*to play pool* until the bar closed" on January 9, 2005. (AT 22) On June 10, 2005, plaintiff reported to Melissa Wolin, M.D., that he suffered from left elbow pain, but "played pool until the bar closed" the night before the appointment. (AT 254.) Plaintiff stated that he "did not use his left arm" and "even drank his beer using his right arm only." (AT 254.) Again, plaintiff's ability to play pool undermines plaintiff's claims of debilitating pain beginning in October 2002.

Fifth, the ALJ questioned plaintiff's credibility based on a telephone interview conducted by a Social Security Administration interviewer with plaintiff when plaintiff filed his application for benefits. (AT 22-23.) The ALJ essentially reasoned that although plaintiff claimed that he was unable to, among other things, "walk too long without his pain becoming intense" or "stand or sit for any length of time," the "SSA interviewer who took [plaintiff's] teleclaim did not observe any difficulty in his ability to hear, breathe, understand, concentrate, talk, or answer questions." (AT 22-23; see also AT 82-84.) The ALJ also commented that

although plaintiff claimed that he was unable to sit for any length of time, "he did not tell the interviewer that he needed to change positions or stand during the interview." (AT 23.) The undersigned finds that this reason does not support the ALJ's credibility determination. Nothing in the interviewer's notes suggests that the interviewer knew what position or positions plaintiff was in during the telephone call or that the interviewer made inquiries of plaintiff in this regard. Moreover, the form completed by the interviewer asks whether the interviewer observed that the claimant had difficulties with hearing, reading, breathing, understanding, coherency, concentrating, talking, or answering, and further requires the interviewer to "[e]xplain any 'No' answers that [the interviewer] think[s] would assist the DDS in making a decision." (AT 83.) The interviewer here answered "no" to all of the questions, yet explained none of the "no" answers. (See AT 83.) Thus, if anything, the interviewer did not believe that any of his observations of plaintiff while on the telephone were material to the disability determination. In light of all of these facts, the undersigned does not give weight to the reason provided by the ALJ.

Although two of the ALJ's five reasons for discounting plaintiff's subjective testimony are of minimal or no persuasive value, the undersigned finds that the remaining reasons provide clear and convincing reasons supporting the adverse credibility finding. Accordingly, the undersigned concludes that the ALJ did not err by finding plaintiff not entirely credible.

C.    Joanne Jones's Lay Witness Statements

Plaintiff also claims that the ALJ improperly rejected the third-party witness statements of Joanne Jones, plaintiff's mother, regarding plaintiff's physical limitations. Although the ALJ considered Ms. Jones's statements contained in a third-party function report, he rejected them, stating:

> The undersigned accords minimal weight to the Third Party Function Report completed by the claimant's mother, Joanne Jones. She essentially repeated the claimant's subjective complaints of pain and inability to

function.  Mrs. Jones is not a medical professional and her observations are accorded some weight but her report is considered somewhat self-serving as she alleges the claimant "has no money" (Exhibit 5E).

(AT 23.)

In assessing whether a claimant is disabled, an ALJ must consider lay witness testimony regarding the claimant's ability to work.  Bruce, 557 F.3d at 1115 (citing Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006), and 20 C.F. R. §§ 404.1513(d)(4), (e)).  Such testimony "*cannot* be disregarded without comment."  Id. (citation omitted).  "When an ALJ discounts the testimony of lay witnesses, 'he [or she] must give reasons that are germane to each witness.'"  Valentine, 574 F.3d at 694 (modification in original) (quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).  "[T]he reasons 'germane to each witness' must be specific."  Bruce, 557 F.3d at 1115 (citing Stout, 454 F.3d at 1054).

Here, the ALJ provided three reasons for according "minimal weight" to Ms. Jones's statements about plaintiff's pain and functional limitations.  First, the ALJ stated that Ms. Jones's "essentially repeated" plaintiff's subjective complaints of pain and functional limitations.  (AT 23.)  In Valentine, the Ninth Circuit Court of Appeals held that where the claimant's and a lay witness's statements regarding the plaintiff's pain and functional limitations are similar, an ALJ may permissibly reject the statements of a third-party lay witness regarding the claimant's pain and functional limitations based on the same reasons the ALJ provided for rejecting or discounting the claimant's subjective testimony about his or her pain and functional limitations.  See Valentine, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").[10]  Here, the ALJ specifically found that Ms. Jones "essentially repeated the claimant's subjective complaints of pain and inability to function" that

---

[10]  Accord Wentz v. Comm'r Soc. Sec. Admin., No. 10-35003, 2010 WL 4269393, at *1 (9th Cir. Oct. 26, 2010) (unpublished).

14

1  the ALJ previously rejected as not entirely credible.  Given the undersigned's conclusion that the

2  ALJ's credibility determination is free of legal error and supported by substantial evidence in the

3  record, the ALJ permissibly relied on his credibility determination in regards to plaintiff to

4  discount Ms. Jones's statements.  Plaintiff does not argue to the contrary.

5          Second, the ALJ reasoned that Ms. Jones "is not a medical professional."

6  (AT 23.)  Although this reason is technically "germane" to Ms. Jones, the undersigned finds it

7  less than credible or legitimate.  As an initial matter, Ms. Jones's statements did not include

8  medical diagnoses or other medical evaluations of plaintiff; she provided statements about

9  plaintiff's pain and functional limitations based on her observations of plaintiff.  Were the court

10  to accept the ALJ's analysis, no lay witness could ever provide evidence acceptable to the ALJ

11  because all lay witnesses are by definition not "medical professionals."  In addition to being

12  logically suspect, the ALJ's reasoning is squarely contrary to applicable regulations and case law

13  that require an ALJ to consider lay witness testimony as competent evidence.

14          Third, the ALJ considered Ms. Jones's statements to be "somewhat self-serving as

15  she alleges the claimant 'has no money.'"  (AT 23.)  Although plaintiff argues that Ms. Jones's

16  statements regarding plaintiff's lack of money were simply statements of fact, the Ninth Circuit

17  Court of Appeals has held that an ALJ may discount a lay witness's statement when the ALJ

18  concludes that the lay witness is influenced by a desire to help the claimant.  See Greger v.

19  Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) ("The ALJ also considered Shields' 'close

20  relationship' with Greger, and that she was possibly 'influenced by her desire to help [him].'  The

21  ALJ's reasons for doubting Shields' credibility are germane to her; accordingly, it was not error

22  for the ALJ to disregard her testimony.").  The ALJ's similar finding here is supported in that

23  Ms. Jones is plaintiff's mother, plaintiff and his daughter both reside with Ms. Jones (AT 402),

24  and the receipt of benefits would likely also benefit Ms. Jones financially.  The undersigned

25  cannot say that this reason for discounting Ms. Jones's statements is not germane or not

26  supported by substantial evidence in the record.

Although the ALJ's reasons for rejecting Ms. Jones's function report appear to be somewhat expedient, the undersigned concludes that the ALJ did not err in evaluating plaintiff's mother's statements.  In light of existing Circuit law and the deference that the court must accord to the ALJ's findings that are supported by the record, the undersigned finds that the ALJ permissibly discounted Ms. Jones's third-party statements.

D.   The ALJ's Questioning of the VE

Finally, plaintiff challenges the ALJ's questioning of the VE on several grounds. First, plaintiff argues that the ALJ erred by not adopting the VE's answers to plaintiff's counsel's hypothetical questions addressed to plaintiff's ability to work, which incorporated Dr. Lui's opinion about plaintiff's functional limitations.  Because the ALJ properly discounted Dr. Lui's opinion, as discussed above, the ALJ did not err by not adopting the VE's answers in response to questions that incorporated Dr. Lui's properly rejected opinions.

Second, plaintiff takes issue with the VE's testimony that only identified two categories of positions that plaintiff could perform: order clerk and surveillance systems monitor. Plaintiff argues that these two jobs do not constitute a "significant range" of work and thus the ALJ's decision violates the holding of "Lounsbury v. Barnhart, 464 F.3d 944 (9th Cir. 2006)." As an initial matter, the citation to Lounsbury offered by plaintiff, and subsequently cited by the Commissioner, is to an opinion that was superseded by an amended opinion; the correct, valid citation is Lounsbury v. Barnhart, 468 F.3d 1111 (9th Cir. 2006).  Additionally, Lounsbury is distinguishable from the present case because Lounsbury involved a determination regarding the types of other work that the claimant could perform made under the specific language of a particular "grid rule" contained in the Medical-Vocational Guidelines, see id. at 1116-17, whereas this case involves the testimony about other work by a vocational expert.  In Lounsbury, the court found that the claimant was disabled as a matter of law under the applicable grid rule.  Here, the ALJ concluded that he could not rely entirely on the Medical-Vocational Guidelines because plaintiff could not perform a full range of light work.  AT 24;

16

1   Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988).[11]  Thus, the court's analysis of whether

2   there was a significant range of other work that the claimant could perform was conducted under

3   a different and distinguishable analytical framework.  Plaintiff has offered no explanation as to

4   why the rule from Lounsburry applies under the facts of this case and, without more, plaintiff's

5   argument lacks merit.

6              Third, plaintiff complains that although the ALJ stated that the VE's "testimony is

7   consistent with the information contained in the Dictionary of Occupational Titles," the ALJ

8   erred by not actually asking the VE whether the VE's testimony was consistent with the

9   Dictionary of Occupational Titles ("DOT").  Plaintiff relies on Massachi v. Astrue, 486 F.3d

10  1149 (9th Cir. 2007), in which the Court of Appeals held that before relying on a vocational

11  expert's testimony regarding the requirements of a particular job or occupation, an ALJ must first

12  ask the vocational expert whether a conflict exists between the DOT and the vocational expert's

13  testimony.  Id. at 1152-53.

14             Here, plaintiff correctly points out that although the ALJ stated that "the [VE's]

15  testimony is consistent with the information contained in the [DOT]" (AT 25), the ALJ did not

16  actually ask the VE whether his testimony conflicted with the DOT.  The ALJ's failure to make

17  the required inquiry constitutes error.  However, that procedural error is harmless because it is

18  inconsequential to the ultimate non-disability determination.  See, e.g., Robbins, 466 F.3d at 885

19  (stating that an ALJ's error is harmless if it is "'inconsequential to the ultimate nondisability

20  determination'") (quoting Stout, 454 F.3d at 1055-56).  Plaintiff does not identify any potential

21  inconsistency between the VE's testimony and the DOT; indeed, he does not even contend that

22  any such inconsistency exists.  See Massachi, 486 F.3d at 1154 n.19 (stating that the ALJ's

23

24             [11]  In Burkhart, the Ninth Circuit Court of Appeals stated that an ALJ can satisfy his
    burden at step five to show that a claimant can perform other work by "either (1) applying the
25  Medical-Vocational Guidelines ('grids') in appropriate circumstances or (2) taking the testimony
    of a vocational expert."  856 F.2d at 1340.  It further stated that "the grids will be inappropriate
26  where the predicate for using the grids—the ability to perform a full range of either medium,
    light or sedentary activities—is not present."  Id.

failure to question the vocational expert about any inconsistency between the expert's testimony and the DOT "could have been harmless, were there no conflict").  Accordingly, the undersigned concludes that, without more, the ALJ's technical error is harmless.

Fourth, plaintiff briefly argues that the ALJ failed to utilize the services of the VE because the ALJ stated that plaintiff could perform other work beyond the order clerk and surveillance systems monitor positions and did so without the use of the VE.  Toward the end of the ALJ's decision, the ALJ stated that plaintiff could perform jobs such as "Cleaner, housekeeper (any industry) . . . , Photo copying machine Op (clerical) . . . , and Collateral Operator (clerical) . . . ."  (AT 25.)  It is unclear why the ALJ made this finding, which appears almost in passing, when he had already concluded that plaintiff could work as an order clerk or surveillance systems monitor.  Assuming that the ALJ's identification of the cleaning and clerical jobs was error, the undersigned concludes that such error was harmless.  The ALJ had already identified, at step five, other jobs that plaintiff could perform, and that determination is free of legal error and supported by substantial evidence.  Thus, even if the cleaning and clerical jobs are disregarded at step five, the ALJ's step five determination was not erroneous.

IV.    CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment is denied.

2.    The Commissioner's cross-motion for summary judgment is granted.

3.    The Clerk of Court is directed to enter judgment in the Commissioner's favor.

DATED:  March 30, 2011

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE